IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| ERIC DAVIS, # 304804, | ) Civil Action No. 3:12-545-MGL-JRM |
| | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) |
| HENRY PERKINS; | ) |
| ANGIE GRAVES; | ) |
| WILLIE EAGLETON; | ) |
| ANTHONY WHITTON; AND | ) |
| ROBIN CHAVIS, | ) **REPORT AND RECOMMENDATION** |
| | ) |
| Defendants. | ) |
| | ) |

The pro se Plaintiff, Eric Davis, filed this action on February 28, 2012.[1] Plaintiff is an inmate at the Evans Correctional Institution ("ECI") of the South Carolina Department of Corrections ("SCDC"). Defendants, all employees of SCDC, are Correctional Officer Henry Perkins, Grievance Coordinator Angie Graves, ECI Warden Willie Eagleton, Captain Anthony Whitton, and ECI Assistant Warden Robin Chavis. On July 19, 2012, Defendants filed a motion for summary judgment. Plaintiff, because he is proceeding pro se, was advised on July 20, 2012, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond Defendants' motion could result in the dismissal of his complaint. Plaintiff filed a response on August 27, 2012.[2]

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02 (B)(2) DSC. Because these are dispositive motions, the report and recommendation is entered for review by the court.

[2] Plaintiff filed an earlier response on June 4, 2012, which he termed a response in opposition to Defendants' motion to dismiss (although Defendants did not file a motion to dismiss), which has also been considered by the undersigned.

## MOTION FOR PRELIMINARY INJUNCTION

Plaintiff appears to be requesting that the Court issue a preliminary injunction ordering that Defendants not obstruct his ability to have law books. Defendants, in their response filed July 3, 2012, contend that Plaintiff's motion should be denied because he did not include any specific allegations supporting his alleged need for a preliminary injunction and only asserts conclusory allegations that Defendants are obstructing or impairing his right to have law books to prepare documents (which Defendants deny). They argue that Plaintiff, in his affidavit, indicates he is receiving law books and appears to base his motion on a disagreement over the timeliness of his receipt of the law books. Defendants also argue that Plaintiff makes no demonstration of the likelihood that he will suffer irreparable harm in the event the relief requested is not granted. Plaintiff filed a reply on July 16, 2012, in which he argues that Defendants are purposefully and deliberately not supplying him with law books and are interfering with his efforts to draft petitions.

As a preliminary injunction temporarily affords an extraordinary remedy prior to trial that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate that: (1) he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

Plaintiff fails to show that he is entitled to relief under the factors set out in Winter. He complains about actions by library law clerk Ms. Miller, who is not a party to this action. To the extent that Plaintiff is alleging denial of access to the courts, he has not shown any actual injury. See Bounds v. Smith, 430 U.S. 817 (1977); Lewis v. Casey, 518 U.S. 343 (1996). Plaintiff has filed

motions and responses in this action, which include numerous references to case law. He also filed another lawsuit (Civil Action 3:12-cv-00593-MGL-JRM) after this action was filed. Additionally, Plaintiff has not shown that the balance of equities tips in his favor or that an injunction is in the public interest. Thus, it is recommended that his motion for a preliminary injunction be denied.

## **MOTION FOR SUMMARY JUDGMENT**

Plaintiff appears to allege that Defendant Perkins failed to protect him from violence because he placed Plaintiff in the wrong cell on August 13, 2010. He also appears to allege that the remaining Defendants violated his rights by failing to properly process his grievances, and to investigate and address the alleged failure to protect incident. Defendants contend that they are entitled to summary judgment because: (1) Plaintiff failed to exhaust his administrative remedies; (2) they are entitled to qualified immunity; (3) Plaintiff fails to show that his Eighth Amendment rights were violated; (4) Plaintiff did not have a constitutionally recognized liberty interest in a particular security classification or prison placement;[3] (5) Defendants Eagleton, Whittington, Chavis, and Graves cannot be held liable under a theory of respondeat superior; (6) Plaintiff may not seek damages under § 1983 against Defendants in their official capacities; (7) Plaintiff makes no viable claim that Defendants Eagleton, Chavis, and Whittington were constitutionally deficient in their supervisory duties; (8) any state law claims should be dismissed under the discretion of the court; (9) any claim for injunctive relief should be denied because Plaintiff fails to show a sufficient likelihood that he will again be wronged in a similar way; and (10) Plaintiff's claims are factually and legally frivolous and should be dismissed and count as a strike pursuant to the Prison Litigation Reform Act.

---

[3]Plaintiff does not appear to be challenging his prison or custody classification, but instead claims that Perkins placed him in the wrong cell which jeopardized his safety.

1. Standard for Summary Judgment

Pro se complaints are held to a less stringent standard than those drafted by attorneys, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.1978), and a court is charged with liberally construing a complaint filed by a pro se litigant to allow for the development of a potentially meritorious case. See Hughes v. Rowe, 449 U.S. 5, 9 (1980). The requirement of liberal construction, however, does not mean the court can ignore a clear failure to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Dep't. of Soc. Servs., 901 F.2d 387 (4th Cir.1990).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). The moving party "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If the moving party carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson, 477 U.S. at 247-48).

2. Administrative Remedies

Ann Hallman, the Inmate Grievance Branch Chief Coordinator for SCDC, states that Plaintiff's grievances related to the allegations in his Complaint have either been returned unprocessed or are currently still pending such that Plaintiff has not exhausted his administrative

4

remedies with respect to any of his grievances. Plaintiff appears to argue that his administrative remedies were unavailable because Defendants failed to process his grievances pursuant to SCDC policies, SCDC employees did not request an extension of time to respond to his grievances, and the time limit has exceeded one and one half years.

Here, Plaintiff grieved the alleged failure to protect him from inmate violence on August 13, 2010, in grievance ECI-1457-10 which was received by SCDC on August 26, 2010. On August 31, 2010, Warden Eagleton responded that corrective action had been taken concerning the incident and it was considered that the grievance was resolved. It appears that the Step 1 grievance was returned to Plaintiff on September 2, 2010. On September 7, 2010, SCDC received Plaintiff's Step 2 appeal of grievance ECI 1457-10. See Attachments to Hallman Aff. Hallman states that as of July 11, 2012 (almost two years after Plaintiff filed his Step 2 appeal), the appeal was still pending a final agency decision. Hallman Aff., Para. 3. Hallman states that because the appeal was still pending, Plaintiff had not exhausted his administrative remedies with respect to the grievance.

"[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir.2008). Additionally, a prisoner is not responsible when he follows the proper grievance procedures and prison officials nevertheless mishandle the grievance. See Hill v. O'Brien, 387 F. App'x 396, at *3 (4th Cir. July 12, 2010) ("[W]hen prison officials prevent inmates from using the administrative process...., the process that exists on paper becomes unavailable in reality." (quotation and citations omitted). Other Circuits have found that administrative remedies are exhausted, found that the remedy is unavailable, or excused exhaustion where prison officials have failed to timely respond. Boyd v. Corrections Corp. of America, 380 F.3d 989, 996 (6th Cir. 2004) (concluding

5

"administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance"), cert. denied, 544 U.S. 920,(2005); Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002) ("[W]e agree that the failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable."); Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002) (agreeing that administrative remedies are deemed exhausted under the PLRA when prison officials fail to respond to inmate grievances); Foulk v. Charrier, 262 F.3d 687, 698 (8th Cir. 2001) ("[O]nce [the prison] failed to respond to [the prisoner's written grievance], no further administrative proceedings were 'available' to him."); Powe v. Ennis, 177 F.3d 393, 394 (5th Cir. 1999) ("A prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding thereto has expired.").

As to Plaintiff's grievance concerning his August 13, 2010 failure to protect claim, more than 125 days[4] elapsed between the time Plaintiff filed his Step 1 grievance (August 26, 2010) and the time he filed this action (February 28, 2012). Defendants have not asserted or presented anything to

---

[4] In order to exhaust the SCDC administrative remedy process, after unsuccessful attempts at informal resolution of the problem(s), (1) an inmate must fill out a Form 10–5 (Step 1 Grievance form) to explain his complaint and give the form to an employee designated by the Warden within fifteen days of the alleged incident; (2) the grievance must then be entered into SCDC's automated system, and the Institutional Inmate Grievance Coordinator ("IGC") notified so that the information in the automated system can be finalized and an attempt to informally resolve it before sending it to the Warden can be made within ten working days from the time the grievance is submitted; (3) the Warden should respond to the inmate in writing within forty days of the Warden's receipt of the Step 1 grievance and then the IGC has five working days to provide the Step 1 response to the inmate; (4) the inmate may then appeal the Warden's response by completing a Form 10–5a (Step 2 Appeal) and submitting it to the IGC within five "calendar days" of the inmate's receipt of the response; (5) the IGC then notifies the Inmate Grievance Branch of the Step 2 appeal and the Branch has another five "calendar days" to get the Step 2 appeal to the responsible SCDC official (the Division Director of Operations) for a response; (6) the Division Director of Operations then has sixty days from the day the appeal was received by the IGC at the institution to respond to the Step 2 grievance, and finally, (7) then there is another five days for the IGC to serve the inmate with the Step 2 response. SCDC Policy/Procedure GA–01.12, at §§ 11, 13.1–13.6 (Oct. 1, 2010). The decision of the "responsible official" who answers the Step 2 appeal is the Department's final response in the matter. Id. at § 13.6.

show that an extension of time to process the grievance was granted or that some other exception applies.

Thus, for summary judgment purposes, Plaintiff has shown genuine issues of material fact as to whether Defendants hindered his ability to exhaust his administrative remedies. Plaintiff, however, has not shown that he exhausted his remedies as to any other of the alleged incidents[5] and thus Defendants' motion for summary judgment should be granted as to Plaintiff's remaining claims.

    3.    <u>Failure to Protect</u>

Plaintiff appears to allege that his constitutional rights were violated because Defendant Perkins failed to protect him from harm from other inmates. Defendants contend that Plaintiff fails to state a valid claim for failure to protect against them. They argue that even if Plaintiff was placed in the wrong cell, his claim fails as his records are devoid of any instances where any prison officials had knowledge of a potential risk of harm to Plaintiff by other inmates and they purposefully ignored the risk. Defendant Perkins states that he does not recall placing Plaintiff in the wrong cell and that even if he did not place Plaintiff in the wrong cell he never indicated that it was not the right cell or that he feared being placed in that cell. Perkins Aff., Para. 3.

To establish a claim under the Eighth Amendment, a prisoner must show that the deprivation is "sufficiently serious" and that prison officials had a "sufficiently culpable state of mind." <u>Wilson v. Seiter</u>, 501 U.S. 294, 297-298 (1991). Deliberate or callous indifference on the part of prison officials to a specific known risk of harm states an Eighth Amendment claim. <u>Pressly v. Hutto</u>, 816

---

[5] Plaintiff either fails to show that he filed a grievance as to those incidents or he fails to show that he exhausted his remedies because the grievances were returned to him for failure to comply with SCDC grievance procedures. <u>See</u> Grievance Numbers ECI-9136-10, ECI-1621-10, and ECI-1800-10 (attachments to Hallman Aff.).

7

F.2d 977, 979 (4th Cir. 1987). Not every injury suffered by one inmate at the hands of other inmates, however, translates into constitutional liability for the prison officials responsible for the victim's safety. See Farmer v. Brennan, 511 U.S. 825, 835 (4th Cir. 1994). In Farmer, the Supreme Court defined deliberate indifference, holding that "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847. The test is not whether an official knew or should have known of the possibility of harm, but whether he did, in fact, know of it and consciously disregard that risk. "[T]he official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. While the objective information known to the official may be used to infer the knowledge he actually had, and to draw inferences about his actual state of mind, those inferences are not conclusive. Further, the Eighth Amendment is not violated by the negligent failure to protect inmates from violence. Whitley v. Albers, 475 U.S. 312, 319 (1986); Moore v. Winebrenner, 927 F.2d 1312 (4th Cir. 1991), cert. denied, 502 U.S. 828 (1991); Pressly, supra.

For purposes of summary judgment, it appears that Plaintiff has asserted a sufficiently serious deprivation. Defendant has not argued otherwise. Plaintiff alleges that after the incident his ribs were swelling and his head and knee were "hurting real bad." Complaint at 4. He has provided medical records indicating that he was treated for a number of contusions and cuts after the alleged incident. See Attachment to Memorandum in Opposition to Defendant's Motion to Dismiss (Plaintiff's SCDC Medical Records).[6]

---

[6]In these records it is noted that Plaintiff had an approximately 2 cm. contusion to his left
(continued...)

In the light most favorable to Plaintiff for purposes of summary judgment, Plaintiff has presented evidence that Defendant Perkins possessed a sufficiently culpable state of mind. In his Complaint, Plaintiff alleges that he told Perkins that Perkins was putting him in the wrong cell, and that no one responded to the cell until at least three hours later. Doc. 1 at 3. In his June 2012 opposition memorandum, Plaintiff states that there were already two inmates housed in the cell which was a two-man cell, and that Perkins walked away from the cell after hearing a scuffle. Doc. 26 at 5. In his August 2012 opposition memorandum, Plaintiff asserts that despite working on the unit for over five years, Perkins put Plaintiff in a cell which already contained two inmates, Perkins knew that Plaintiff was having problems with the inmates in the cell where Plaintiff was placed, and that Perkins knew that these inmates had previously made threats to Plaintiff. Doc. 42 at 2, 10, and 11. Thus, it is recommended that summary judgment be denied as to Plaintiff's failure to protect claim against Defendant Perkins. Plaintiff has not, however, established that the remaining Defendants (Graves Eagleton, Whitton and Chavis) had the sufficiently culpable state of mind,[7] such that summary judgment should be granted as to Plaintiff's failure to protect claim against them.

4.  Grievances/Failure to follow SCDC Policies

Plaintiff appears to allege that when Defendants Chavis, Whitton, Eagleton, and Graves learned about the incident, they failed to properly investigate the situation, process his grievances, and take care of the situation. Defendants appear to assert that Plaintiff failed to properly

---

[6](...continued)
forehead, an approximately 1 cm. abrasion at his left hairline, bruising to his first and second left ribs, an approximately 7 cm. contusion to his left back below his shoulder blade, and an approximately 1. 5 cm. bruise to his left inner knee. His abrasion was closed, and Plaintiff was given a muscle relaxer and Motrin.

[7]At most, Plaintiff speculates and or presents inadmissible hearsay evidence that some or all of these Defendants knew about guards using other inmates to discipline troublesome inmates.

9

submit a number of grievances, Warden Eagleton responded appropriately to the grievance as to Plaintiff's failure to protect claim, and an appeal of Eagleton's response is currently pending.

Plaintiff fails to establish a constitutional claim as to the processing of his grievances or as to his claims that Defendants have failed to follow SCDC policies or rules. The "Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by the state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Even if Defendants violated SCDC grievance procedures, such actions do not state a claim which is actionable under § 1983. See Brown v. Dodson, 863 F. Supp. 284 (W.D.Va. 1994). Allegations that Defendants have not followed their own policies or procedures, standing alone, do not amount to constitutional violations. See United States v. Caceres, 440 U.S. 741 (1978); see also Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)(if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue); Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992)(violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).

     5.     Respondeat Superior/Supervisory Liability

Defendants Graves, Eagleton, Whitton, and Chavis contend that they cannot be held liable pursuant to the doctrine of respondeat superior. They assert that Plaintiff has not shown that they acted personally in the deprivation of his rights with respect to his placement in the wrong cell. These Defendants also contend that Plaintiff makes no viable claim against them that they were constitutionally deficient in their supervisory duties.

Plaintiff cannot show that Defendants Graves, Eagleton, Whitton or Chavis are liable under a theory of respondeat superior. The doctrine of respondeat superior generally is inapplicable to

§ 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-43 (4th Cir. 1982).

A plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.), cert. denied, 513 U.S. 813 (1994). Plaintiff has not alleged that Defendants Graves, Eagleton, Whitton, or Chavis had any personal involvement in the alleged incidents. He has presented no evidence that these Defendants had actual or constructive knowledge that their subordinates were engaged in conduct that posed a "pervasive and unconstitutional risk" of injury to Plaintiff. Additionally, Plaintiff has not shown any affirmative casual link between these Defendants actions or inactions and Plaintiff's alleged injury. Thus, Plaintiff has not shown any basis for supervisory liability on the part of Defendants Graves, Eagleton, Whitton, and Chavis.

6. Eleventh Amendment Immunity

Defendants appear to contend that they are entitled to Eleventh Amendment immunity in their official capacities. When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is

11

precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated,

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

Id. at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to the Eleventh Amendment immunity. Id. at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state. State officials may only be sued in their individual capacities. Therefore, Defendants are entitled to Eleventh Amendment immunity from monetary damages in their official capacities.

7. Qualified Immunity

Defendants contend that they are entitled to qualified immunity from any monetary claims brought against them in their individual capacities. Government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The analysis of the defense of qualified immunity is generally examined using a two-step analysis. See

Saucier v. Katz, 533 U.S. 194, 201 (2001).[8] The first step is to determine whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the defendant's conduct violated a constitutional right. Id. at 201. If the facts, so viewed, do not establish a violation of a constitutional right, the plaintiff cannot prevail, and "there is no necessity for further inquiries copy concerning qualified immunity." Id. If, however, a favorable view of the facts does establish such a violation, the next step is to determine whether the right violated was clearly established at the time of the alleged offense. Id. If the right was not clearly established, the defendants are entitled to qualified immunity. Id.

As discussed above, Plaintiff fails to show that Defendants Graves, Eagleton, Whitton, and Chavis violated any of Plaintiff's constitutional rights. They are, therefore, entitled to qualified immunity from monetary damages in their individual capacities.

Plaintiff's Eighth Amendment rights were clearly established at the time of the alleged actions by Perkins. As discussed above, there is a genuine issue of material fact as to whether Defendant Perkins failed to protect Plaintiff from harm from other inmates. Thus, Perkins fails to show that he is entitled to qualified immunity at this time.

## **CONCLUSION**

Based on review of the record, it is recommended that Defendants' motion for summary judgment (Doc. 38) be **granted** as to Plaintiff's claims against Defendants Graves, Eagleton, Whitton, and Chavis and as to Plaintiff's claims against Defendant Perkins in his official capacity.

---

[8]The Supreme Court has clarified that these steps do not need to be taken in the sequence set forth in Saucier, and that
> [t]he judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs should be addressed first in light of the circumstances in the particular case at hand.

Pearson v. Callahan, 555 U.S. 223, 236 (2009).

It is further recommended that Defendants' motion for summary judgment be **denied** as to Plaintiff's claim against Defendant Perkins in his individual capacity. It is also recommended that Plaintiff's motion for a preliminary injunction (Doc. 34) be **denied**.

Joseph R. McCrorey
United States Magistrate Judge

September 28, 2012
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).